## Case No. 2,335.

### The CAMBRIDGE.

[4 Sawy. 252.][1]

District Court, D. California. May 10, 1877.

SEAMAN'S RIGHT TO BE CURED AT SHIP'S EXPENSE.

*Held*, under the circumstances of this case [i. e. abandonment of the ship's service], that the seaman had relinquished his right to be cured at the ship's expense.

[See Brown v. The Bradish Johnson, Case No. 1,992.]

In admiralty.

C. T. Botts and D. T. Sullivan, for libellant. Milton Andros, for claimant.

HOFFMAN, District Judge. There can be no doubt that the libellant was sick when he left the vessel at San Luis Obispo and came to San Francisco. It is equally clear that he was entitled to be cured at the ship's expense, and was not compelled to rely upon such medication as the captain could afford him out of the ship's medicine chest. If the captain offered to procure a physician to attend him. or to take him to one at San Luis Obispo, and the man rejected the offer, he had no right to abandon the service for the purpose of going into the marine hospital at San Francisco. The libellant, however, while admitting that the master offered to procure a physician, denies that he rejected the offer; and states that after wasting five days without treatment or relief, he determined to take the steamer for this city. Which of these accounts is true, I have no means of ascertaining with certainty. The master seems to have been persuaded that the libellant's illness was merely pretended, and that his real motive for desiring his discharge was his wish to accompany the first mate, who was leaving the vessel; but it now appears that he was mistaken in supposing the man's illness to be feigned. I incline to think that he should have taken some measures to ascertain the truth; and when he denied the man's request for a discharge and a permit to enter the hospital in San Francisco, which could be reached in a day

and a half, he should have procured the attendance of a physician to ascertain the man's real condition, and, if necessary, to afford him proper medication.

He seems to have anticipated that the man would leave, for he made a provisional engagement with another person to serve as his substitute. If he intended to fix the offense of desertion upon him, and to insist upon the forfeiture of all of his wages, he should have taken measures to put the man clearly in the wrong, by procuring and tendering to him proper medical treatment. On the other hand there can be no doubt that the libellant, when he left the vessel, had determined to finally abandon the service. I think it quite likely that he would have left even if the captain had procured and tendered to him the services of a physician. There seems to me, therefore, to have been fault on both sides. On that of the master in not furnishing to the man the medical aid he required; on that of the man in not demanding, or at least signifying his willingness to accept it, and in insisting and acting upon his assumed right to abandon the service, and to go to San Francisco at all events.

I think, on the whole, I am justified in treating the abandonment of the service by the libellant as a renunciation by him of any further claim upon the ship for the expenses of his cure; especially as his charge for three weeks' board, during which he claims to have been under treatment, is hardly reconcilable, with the facts that his doctor's bill was only $5 (representing two consultations), and his apothecary's bill only $2. These facts seeming to show that his illness was neither severe nor protracted, and that it could readily have been treated by a competent physician at San Luis Obispo.

I shall, therefore, allow him $105.18, the amount of wages due him at the time he left the service.